## STATEMENT OF FACTS

Between August 28, 2014, and September 3, 2014, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, Detective Palchak ("UC") and members of the Task Force posted an advertisement on the website Craigslist. The advertisement was posted in the "casual encounters" section of the classifieds and used language to attract individuals with a sexual interest in children.

On or about August 28, 2014, at approximately 5:14 p.m., an individual later, identified as the defendant Michael Gutierrez ("defendant"), responded to the craigslist advertisement by e-mail and wrote, "My names is Mike and I've been thinking about all things taboo for a long time . . ." The defendant provided his phone number to "call or text." The UC responded on September 1, 2014 at approximately 3:23 p.m., "cool, [UC's name] love incest young etc . . . let me know if you have same interest. Are you a dad?" The defendant responded, "Yes . . . same interests. I'm a dad. Did you want to get together or talk?" The defendant explained that he had a boy but that girls were more his "thing." The UC explained that he was the father of a young girl that that he "played" with the child. The UC then wrote, "My girl is very young not sure if that is your thing. Open to meeting up once I build trust." The defendant responded, "Yes . . . that's my thing . . . yng. Definitely need the trust factor. Don't want to get into trouble. This is why I'm very nervous but excited at the same time. Can I call or text??? . . . So . . . what kind of play and is it just the two of you . . .?? . . . Bed time or bath time . . .??" The UC explained that he was separated and would "play" with the child during visits. The defendant wrote that he is 45 years-old and lives in NOVA. The UC provided his phone number so the two could talk and text message.

On September 1, 201, at approximately, 5:30 p.m., the defendant and the UC, having exchanged cell phone numbers, began to text message. The defendant started, "U there . . . how often you play with yours?" The defendant continued, "Mine is older and he would know . . . Although, I have a coworker that dropped off [girl] when [girl] was young-er. I helped [the girl] get ready for bed." The UC wrote, "Just a little worried with the trust thing, where u want to see this going? U looking to play with a girl?" The defendant responded, "Nothing to worry about on this end . . . way too much to lose. I'm totally new to this. I've seen some photos but that's about it and they were more suggestive than anything else . . . I'd like to play but worried like you . . . trust issue . . . is there a play chance?" The UC wrote, "Can't let you fuck her but other stuff would in play with her." The defendant responded, "That would be cool . . . fucking is probably too much," and the UC replied, "Yeah eating her pussy and her jerking you while I watch would be cool once we feel ok with each other." The defendant responded, "Ok . . . that would be good to." The two then agreed to talk and text further the following day.

On September 2, 2014, the defendant and the UC continued their conversation. The UC asked the defendant what he would like to do to the child and the defendant responded, "Maybe some licking in different areas . . . play time for sure." The UC again wrote, "My daughter's

1

name is [name of child] and she is cool with everything tomorrow, if she is too young just let me know." The defendant replied, "Not too young at all." The defendant and the UC then discussed logistics for a meeting the following day – September 3, 2014 at approximately 4:30 p.m.

After multiple requests to talk by the defendant, the defendant called the UC at approximately 7:17 p.m. on September 2, 2014. During the course of the conversation, the defendant and the UC discussed the time and location of the meeting which would occur the following day. The UC explained that they would meet and then all three of them would go back to the UC's apartment. The defendant asked, if "everything was cool," and the UC explained that he had talked to the child and that she was "cool" and would not say anything. The defendant explained that he was very "excited" and asked what the child would be wearing. The defendant asked if it would be ok if he took her clothes off. The defendant asked what the UC does with the child – specifically, the defendant asked, "Do you finger her . . . any ass play?" The UC and the defendant discussed what they would do to the child in great detail.

As the conversation continued, the defendant told the UC that a couple of years ago he was watching the two year-old female child of a friend. At bedtime the defendant took the child to the bathroom and enjoyed watching her take her clothes off. After the child fell asleep, the defendant put his hand down the child's underpants. The defendant stated that he has a 10 year-old son and "that he used to run across the house naked" and that the defendant would enjoy that.

The defendant mentioned that he has attempted to meet people into "family play," before but that he has run into people who are fake. The defendant stated that he has "been looking for a long time," and that he "had one in Texas [where he family lives]" but the individual backed off and that he "had another one," but he backed out at the last minute with an excuse. The conversation ended with a plan for the following day.

On September 3, 2014, the defendant and the UC continued their text message conversation. During that conversation the UC asked, "So excited man, how do you want to start once we all go back to my place?" The defendant responded, " . . . I would like to have [name of child] sit with me if she's okay with that; maybe on my lap or stand with her butt against me. I hope she's wearing a skirt . . . I'd like to start somewhere at the top or middle and work my way around . . . I want to start from her tiny chest and work my way down . . . help her out of her clothes slowly . . . maybe have her in panties for a quick minute." When the UC asked, "How do you want to cum with her," the defendant answered, "I would like to cum on her pussy." The UC asked, "Do u want to jerk on her pussy or have her help you?" The defendant answered, "Have her help." The UC then reiterated, "I told her yesterday that sucking and fingering is all we would be doing but I couldn't remember if you wanted her to suck your cock or not." The defendant responded, "Sure . . . Could I should in her mouth? . . . do you finger her pussy? . . . Is it just one finger?" The UC responded, "One with no lube and I usually have to lube to get 2 in really easy." The defendant responded, "I'd love to try that . . . or get back or doggy . . . I can do it while she's sucking your dick . . . I would also love licking her in the same position."

As the text messaging continued on September 3, 2014, the defendant wrote, "This is going

2

to be exciting . . . does she have fun or feel good with all this . . . anything anal beside fingering?" The UC and the defendant then confirmed the meeting for 4:30 p.m. that same day. While driving to D.C. the defendant continued to communicate with the UC, providing an estimated time of arrival as 4:45 p.m. and information about parking. On September 14, 2014, at approximately 5 p.m. the defendant, having travelled from the Commonwealth of Virginia, arrived at the meeting place in Washington, D.C. The defendant sat down next to the UC and said the UC's name. They shook hands. The defendant stated that he spilled gas on his shirt and had to change shirts. The defendant was arrested. Upon his arrest the defendant was in possession of a Virginia driver's license baring the name Michael Gutierrez.

Law enforcement officers identified the defendant through the phone number provided by the defendant to the UC for purposes of talk and text messaging. The defendant was further identified through law enforcement and public databases as Michael Angel Gutierrez of Lorton, Virginia.

After his arrest, the defendant waived his rights and provided a statement to law enforcement. The defendant acknowledged corresponding with the UC and travelling from Virginia to the District of Columbia. The defendant was asked whether or not it was his understanding that he was coming to D.C. to meet with an individual and his daughter for the purpose of having sexual contact. The defendant acknowledged that was true.

---

DETECTIVE TIMOTHY PALCHAK
METROPOLITAN POLICE DEPARTMENT


Sworn and subscribed to before me this _____ day of September, 2014.

---

United States Magistrate Judge